# UNITED STATES DISTRICT COURT

*of the*

## Northern District of Texas

| | |
|---|---|
| Michael J. West-*plaintiff* <br> *v.* <br> ABM Industries Inc. et al. <br> -*defendants* | 3-19CV-2822-X-BT |

Plaintiff's Objection and Answer and Brief in Support To Defendant D/FW-PFIC's 12(b)(6) Motion to Dismiss and Brief in Support

To the Honorable Court hearing this action:

Comes Now plaintiff Michael James West. And follows now; plaintiff's Objection to defendant Dallas/Fort Worth-Public Facility Improvement Corporation's (D/FW-PFIC) belief: plaintiff *"incorrectly named"* them as a defendant in this matter. Plaintiff answers defendant's 12(b)(6) Motion To Dismiss And Brief In Support.

Plaintiff objects to D/FW-PFIC misquoting and paraphrasing of his First Amended Complaint and the modification of defendant's name from D/FW-[P]FIC to DFW Airport. This is an attempt to send plaintiff down a slippery slope of prosecuting a separate entity which enjoys governmental immunity but is *not* an actor *nor* a party to this suit at law.

1. D/FW-PFIC is a Non-Profit Corporation and is a nonprofit airport facility financing corporation with the general power to sue and be sued in its corporate name[1].

2. D/FW-PFIC's purpose is to *finance, plan, develop, construct, equip [...] improve, maintain and/or operate the Dallas/Fort Worth International Airport*[2]

3. This court action arises in great part because of the rapacious design and ability of private vendors to provide employees that can perform work "traditionally performed by airline employees." This has resulted in the development of a novel *Business Model salient throughout the airline Industry*. A highly competitive culture of transient business contracts and agreements; polymorphous alliances between members of the airline industry and enterprising corporate-business concerns interested and invested in the available opportunities.

4. The Freedom of Information Act makes testimony, excerpts from these contracts and agreements publicly available. Business entities[3] must attain RLA jurisdiction in accordance with the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq. To do that, business entities along with a "sponsor" (established rail or air carrier) provide testimony and evidence before the National Labor Relations Board (NLRB) and or the National Mediation Board (NMB).

---

[1] In accordance with the legislative law of the State of Texas, the Local Government Code; Chapter 303 Public Facility Corporations-Sec. 303.041(6), D/FW-PFIC is granted the power to "sue and be sued in its corporate name;"

[2] Articles of Incorporation of Dallas-Fort Worth International Airport Public Facility Improvement Corporation; Article Four
[3] That are not established rail or air carriers

5.    Plaintiff alleged in his *First Amended Complaint* paragraph 6-line 5, "D/FW-FIC provides oversight of daily operation of its Employee Shuttle Motor Coach system th[r]ough its Parking Management Division.

D/FW-PFIC responded thusly:

> "The present action involves Plaintiff's employment with ABM and AllTex. Plaintiff does not allege he was an employee of DFW Airport. Throughout his twenty-page Complaint, Plaintiff makes various allegations against Defendants, collectively, however, the Complaint is unclear as to which causes of action are being asserted against which Defendants. Additionally, Plaintiff fails to make any specific claims or allegations as to DFW Airport, and merely mentions DFW Airport once in his Complaint. Plaintiff's sole allegation that DFW Airport provides oversight of daily operation of its Employee Shuttle Motor Coach system through its Parking Management Division is purely speculative[4]."

6.    When an employer is not a rail or air carrier engaged in the transportation of freight or passengers, the [National Mediation Board] NMB applies a two-part test in determining whether the employer and its employees are subject to the RLA. First, the employer must provide employees to staff jobs "traditionally performed by employees in the airline industry." Second, the rail or air carrier (effectively the *entity[5]* providing a working sponsorship) "*must effectively* exercise a significant degree of influence over *the company's daily operations and its employee's performance of services* in order to establish RLA jurisdiction[6]."

---

[4] Pg. 2 paragraph 2 of defendant's 12(b)(6) docketed no. 32
[5] In some agreements an employer contracts with one or more airlines or an airport authority, and indeed may contract with both in certain airports.
[6] Mary L. Johnson-General Counsel/NMB pg.21 NMB file No. CJ-7192

7.    Examples of "significant influence" in the view of the NMB include; input into staffing and scheduling decisions, involvement in day to day operations and "access" to operations and records, and the ability to monitor employees and demand corrective action by the employer.

8.    Pragmatic to this plaintiff are the actions of the agents, employees, or other persons of the various organizations acting in concert and able to wield power over his work conditions with increasing levels of retaliatory impunity.

9.    This increasing level of impunity fed on itself; and led agents, employees, or other persons to act with malicious and or injurious conduct upon the plaintiff. These acts[7], not exercised in good faith, with ordinary care, or in the best interests of their respective organizations give rise to this action.

10.   It is with purpose and intent plaintiff brings this action *and includes* D/FW-PFIC. The chief reason plaintiff prosecutes thusly: agents, employees, or other persons acting in collective/disparate on behalf of D/FW-PFIC and/or other vendors, industries, and agencies with conduct **not exercised** in good faith, with ordinary care, or in the best interests of D/FW-PFIC or of other respective vendors, industries, and agencies resulting in the bringing of this court action for the resulting, humiliation, distress, and injury upon the plaintiff.

11.   D/FW-PFIC attempts to stand on ground of stare decisis provided in *Bell Atlantic Corp. v Twombly*[8]. Plaintiff is aware of the legal theory that allowed the respondents to prevail in that matter.

---

[7] See Plaintiff's *"First Amended Complaint"* docketed no 19 of this action.
[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) referenced, *id.* Pg. 2 paragraph 4.

4

The plaintiffs failed plausibly demonstrate a conspiracy (heightened pleading standard) among the Regional Bell Operating Companies (RBOCs) that could be *plausibly denied* by the RBOCs.

12. In his First Amended Complaint plaintiff went into detail to describe how the SmartDrive™ cameras on board the commercial motor vehicles affected him. On page 16 plaintiff states, "[p]laintiff began to make record of the times and locations of the upload[ed]/recordings of his driving, conversation, and other actions."

13. Agents, employees, or other persons acting in association with D/FW-PFIC went exceedingly beyond the *quality assurance* function of SmartDrive to acts of surveillance, monitoring, and harassment. that were pervasive, harassing, lasting over 6 weeks, and affected (and detailed its affect) plaintiff in violation of 42 U.S.C. § 12203(b)[9].

14. Plaintiff remains incredulous D/FW-PFIC was unable to make the inference; plaintiff alleged the SmartDrive On-Board Monitoring system (as installed on the shuttles the plaintiff drove) were being manipulated/monitored locally. It shouldn't have been according to SmartDrive Inc., the FMCSA/DOT, or in plaintiff's prior experience. Plaintiff's is confident and intends to prove; D/FW-PFIC, agents, employees, and other persons performed this harassment and other forms in pervasive monitoring. And did so without good cause.

15. Plaintiff complained to his Site manager hoping the monitoring would stop. Plaintiff suffers cognitively in a way, on occasion, obstructs his ability to discern malevolent intent; and or assert himself effectively.

---

[9] citing docket at no. 19 in this action; see pp. 14-16, starting at line 6 on p. 14; including paragraphs 16-19.

Reticent to offend others plaintiff often allows himself to be affronted. Plaintiff was passionate about his job as it provided him with a way to serve others and satisfied his fascination with motor coaches. Plaintiff is steadfast in his belief the defendant-instant is not prejudiced by this or any other of the claims contained in his First Amended Complaint. Losing the ability to perform that job or any like it has been injurious in a way that compels him to seek repair.

16.   Plaintiff is *incredulous* the defendant is unable to make the inference plaintiff was often forced to supervise two bus routes on foot while other supervisors had vehicles. D/FW-PFIC should have been concerned when they arrived to investigate a bus accident while plaintiff, the supervisor responsible, had no vehicle to respond quickly to the scene[10]. Instead D/FW-PFIC chose to ignore disparate treatment by a manger who by his own account has served at the airport for several years while being demoted from asst. site manager to shift supervisor. How can D/FW-PFIC be prejudiced by plaintiff's allegations?

17.   Plaintiff can plausibly prove before a jury his set of facts. Discovery materials from defendants in this matter will add to the preponderance of proof plaintiff is prepared to exhibit. Plaintiff dares not make *any* allegation he is not prepared to prove with testimony and exhibits presently available.

Prayer Before the Honorable Court

Plaintiff therefore respectfully prays; that in this matter now before the Court, give credence to plaintiff's objection. Deny-Defendant D/FW-PFIC their 12(b)(6) Motion to Dismiss and Brief in Support; and deny D/FW-PFIC's Prayer for Relief.

---

[10] Plaintiff's *First Amended Complaint,* paragraph 12, pp. 9, 10

Respectfully,

*[signature]*

Michael J. West, plaintiff *pro se*

630 Primavera Drive

Arlington, TX 76002

michael.j.west@hotmail.com

(682)438-6883

## Certificate of Service

A true and correct copy of this entire document is served upon all parties of record via the court's ECF system, as per L.R.C.P 21(a).