IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES WEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 3:19-cv-02822-X-BT |
| ABM INDUSTRIES, INC. and | § | |
| ALLTEX STAFFING AND | § | |
| CONSULTING LLC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* employment discrimination case brought under the Americans with Disabilities Act (ADA) are Defendant AllTex Business Consulting LLC's (AllTex) and Defendant ABM Aviation, Inc.'s (ABM)[1] respective Motions to Dismiss under Rules 12(b)(1) and 12(b)(6) (ECF Nos. 35 and 41). For the following reasons, ABM's Motion should be DENIED as unnecessary, and AllTex's Motion should be GRANTED in part and DENIED as unnecessary in part.

## Background

Plaintiff Michael West alleges that he has Attention Deficit and Hyperactivity Disorder (ADHD). Am. Compl. 7 (ECF No. 19). West states that his

---

[1] AllTex contends that the Amended Complaint misnames it "AllTex Staffing and Consulting LLC," and ABM contends the Original and Amended Complaints misname it "ABM Industries, Inc." AllTex Mot. 1 n.1; ABM Mot. 1.

1

ADHD limits his ability to learn new information, concentrate, and reason effectively; causes him to act impulsively; and causes him to be forgetful. *Id.* He was hired in March 2019 to drive an ABM motor coach shuttle at Dallas Fort-Worth Airport (DFW). *Id.* 3-4. West alleges that he applied for and obtained the job through, and was paid by, AllTex. *Id.* 3. However, he states that he "serv[ed] at the pleasure of ABM." *Id.* 4. Shortly after starting the job as a driver, West applied for and received a promotion to field supervisor and was assigned to work the overnight shift. *Id.* 5-6. He alleges that his training for the field supervisor position was "'on the job' and word of mouth" but that he took written notes during training whenever possible. *Id.* 6. According to West, however, his first few weeks as a field supervisor "presented a new challenge, trying to remember various duties to be performed at certain times throughout the night." *Id.*

In his second week on the job as field supervisor, West's shift manager, whom West characterizes as patient and accommodating of his ADHD, left ABM. *Id.* 7. West alleges that he "began to endure harassment immediately after her departure." *Id.* The acts of harassment included: West "being dropped off at more remote locations to supervise route operations; damage to his personal vehicle; [and] not being provided with daily driver duty rosters that would include driver names and corresponding motor coach numbers for the route(s) [West] was assigned to supervise." *Id.* 8. West states that he "complained to the site manager via email detailing these acts," and that in a meeting addressing the complaint he

2

was "questioned about his mental state of mind[] and the quality of his home life." *Id.*

West also details an incident in which he accidentally left his personal cell phone in another shift supervisor's coach and later discovered that the phone had been tampered with. *Id.* 9-11. Further, West avers that he was frequently "made to wait while the other field supervisors were given duty assignments [and] that [the] wait was sometimes a few minutes or the better part of an hour." *Id.* 12. He describes that he would "sometimes be pulled away from an assigned task and told to do something entirely different without prior notice." *Id.* Moreover, West states that at least one time he was asked to "go and try to start up" a coach that had fuel spilled on it a few days prior, a task West perceived as dangerous and "potentially explosive." *Id.* 13. Ultimately, West declined to start the coach. *Id.* Finally, according to West, the Smart Drive® Onboard Monitoring System, which records audio/video of a driver's conduct behind the wheel, "activated far more than it had while his job title was 'motor coach driver'" once he became field supervisor. *Id.* 14-15. West alleges that he filed discrimination charges with the EEOC in mid-August 2019, and "[t]he EEOC conferred the right to sue . . . on September 3, 2019." *Id.* 14.

On November 26, 2019, West filed his Original Complaint in this action (ECF No. 3), naming ABM and DFW as defendants. On January 23, 2020, he filed his Amended Complaint adding AllTex as a defendant. On May 12, 2020, West

3

voluntarily dismissed his claims against DFW with prejudice. Stipulation of Dismissal (ECF No. 45). Accordingly, DFW is no longer a party.

In his Amended Complaint, West brings claims for discrimination and retaliation under the ADA. He also appears to assert a claim for discrimination for refusal to operate a vehicle under the Surface Transport Assistance Act (STAA). Am. Compl. 18-19. AllTex and ABM filed motions to dismiss West's STAA claim under Rule 12(b)(1). AllTex also moves to dismiss West's ADA claims under Rule 12(b)(6) on the grounds that West has not pleaded sufficient facts or exhausted his administrative remedies as to AllTex with respect to those claims and alternatively argues that West's ADA claims against AllTex are time-barred. AllTex's Motion is fully briefed; West responded to ABM's Motion, but ABM did not file a reply. Both motions are ripe for determination.

**Preliminary Matters**

West appears to assert a claim under the STAA. Am. Compl. 18-19. AllTex and ABM seek dismissal of that claim under Rule 12(b)(1) on the grounds that West has not alleged that he timely initiated a complaint with the Secretary of Labor for such a claim and, in any event, there is no private cause of action under 49 U.S.C. § 31105.

When a party files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)

(per curiam). Here, however, it is not necessary to consider Defendants' Rule 12(b)(1) arguments because West expressly disclaims any intent to bring a claim under the STAA. Resp. to AllTex Mot. 3 (ECF No. 39) (stating that references to STAA "are not included to seek remedy or prosecute, or to infer plaintiff's desire to bring a labor action/'STAA'"); Resp. to ABM Mot. 3 (ECF No. 44) ("Plaintiff in this matter does not seek relief under the S.T.A.A."). In his responses to Defendants' Motions, West explains that he cites provisions of the STAA in his Amended Complaint "to establish the employer/employee relationship" and to lay a foundation for anticipated character evidence. Resp. to AllTex Mot. 3; *see also* Resp. to ABM Mot. 5 ("Plaintiff includes codified regulations from Title 49 [o]f the United States Codes to demonstrate employment status and for future evidentiary reasons."). Because West admits he does not seek relief under the STAA, the Court should deny as unnecessary ABM's Motion and AllTex's Rule 12(b)(1) Motion.

## Legal Standards

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual

5

allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins*

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

AllTex challenges West's ADA claims on three alternative grounds: (1) West's Complaint articulates no basis for imposing liability on AllTex for the alleged acts and omissions of ABM's personnel; (2) West did not allege administrative exhaustion as to AllTex; and (3) West did not timely file suit against AllTex. The Court addresses these arguments in turn.[2]

"A staffing agency is liable for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 229 (5th Cir. 2015). Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to allege that a staffing agency participated in the discrimination or knew or should have known about it. *E.g.*, *High v. City of Wylie*, 2019 WL 3557238, at *5 (E.D. Tex. Aug. 5, 2019) (dismissing employment claim against staffing agency because "there [were] no factual allegations that [the agency] participated in the alleged

---

[2] While ABM previously moved to dismiss West's ADA claims as alleged in the Original Complaint, ABM's first Motion to Dismiss is not before the Court. Rather, ABM's pending Motion to Dismiss, which it titles an "Amended Motion to Dismiss," acknowledges that its first Motion to Dismiss directed at the Original Complaint is moot. ABM's pending Motion does not seek dismissal of West's ADA claims as alleged in the Amended Complaint. Accordingly, those claims remain live.

discrimination or knew or should have known about" it); *Canon v. Bd. of Trs. of State Institutions of Higher Learning of Miss.*, 133 F. Supp. 3d 865, 874 (S.D. Miss. 2015) (dismissing employment discrimination claims against staffing agency, in part, because "there [was] no allegation or basis for an allegation that [the agency] had any involvement in the employment decisions at issue in th[e] case").

Here, West's factual allegations that mention AllTex, in their entirety, are as follows:

(1) "[B]y searching the Internet, plaintiff found a way to get hired for the same desired job [with ABM] through a staffing agency. Plaintiff was indeed hired to drive the ABM/Aviation Employee Shuttle via AllTex (dba ABBA Staffing and Consulting)." Am. Compl. 3.

(2) "ABM/Aviation or ABMI apparently paid AllTex and AllTex paid plaintiff." *Id.*

(3) "AllTex Staffing and Consulting LLC. (dba ABBA Staffing and Consulting) is the staffing agency Plaintiff applied to and thereby able to enjoy the pleasure of employment as a commercial motor coach driver based solely and serving at the pleasure of ABM/Aviation motor carriers." *Id.* 4.

(4) "Approximately two weeks after being given the right to sue plaintiff was summoned an over-the-air radio system into an onsite HR office. Several drivers and field supervisors were individually being summoned to go to the HR office. When plaintiff was allowed to enter the HR office, he was compelled to convert 'from ABBA [AllTex] TO ABM [ABM/Aviation].'" *Id.* 17.

These allegations do not permit the Court to draw a reasonable inference that AllTex is liable for the alleged misconduct of ABM employees and personnel. Importantly, West alleges that although he was hired and paid by AllTex, he served

8

at the pleasure of ABM. *Id.* 17. And, while West does not allege that he was terminated, his Amended Complaint describes the allegedly discriminatory conduct as occurring on-the-job and at the hands of ABM. His Amended Complaint is devoid of allegations that would impute that conduct to AllTex.

In his response to AllTex's Motion, West argues that "AllTex's behaviors and longstanding relationship with all defendants makes Joinder necessary," and that after he filed his Original Complaint he "came to realize [that] several circumstances and behaviors between the parties and surrounding this action indicated AllTex's involvement was greater than his working experience initially led [sic] him to believe." Resp. AllTex Mot. 1. This does not alter the fact that West's Amended Complaint, the live pleading in this matter and the pleading that joins AllTex as a defendant, does not contain sufficient allegations to impute the described allegedly discriminatory conduct to AllTex. Indeed, in the context of a Rule 12(b)(6) motion, the Court assesses the sufficiency of the complaint only and determines whether it states a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. The Amended Complaint lacks sufficient factual matter for the Court to infer that West can plausibly recover against AllTex. Therefore, the Court should dismiss those claims under Rule 12(b)(6).

AllTex also argues that West has failed to allege administrative exhaustion as to AllTex. AllTex acknowledges West's allegations that he "filed discrimination charges with the EEOC in mid-August 2019" and "[t]he EEOC conferred the right

9

to sue to on plaintiff on September 3, 2019." Am. Compl. 14. However, AllTex argues that these allegations are "wholly conclusory" because they do not "state against whom [West] allegedly filed an EEOC Charge or regarding whom the EEOC allegedly issued a right-to-sue notice." AllTex Mot. 6. "[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against his employer for violation of the ADA." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam). The ADA incorporates by reference the procedures applicable to actions under Title VII, 42 U.S.C. § 2000e, *et seq. Id.* Title VII provides that "a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved[.]" 42 U.S.C. § 2000e-5(f)(1). "[A] party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge or it has unfairly prevented the filing of an EEOC charge." *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988); *see also Dunn v. Uniroyal Chem. Co., Inc.*, 192 F.Supp.2d 557, 560 (M.D. La. 2001). West does not allege that he named AllTex in his EEOC charge; nor does he allege enough facts to establish an identity of interest between ABM—or any party named in the charge—and AllTex. In fact, West admits in his response to AllTex's Motion that, *after* initiating this litigation, he "came to realize [that] several circumstances and behaviors between the parties and surrounding this action indicated AllTex's involvement was greater than his working experience initially led [sic] him to

10

believe." Resp. AllTex Mot. 1. This admission indicates that West did not name AllTex in the EEOC charge. Accordingly, West has failed to allege administrative exhaustion as to AllTex, and dismissal is therefore proper under Rule 12(b)(6). *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979) ("A judicial complaint that fails to allege exhaustion of administrative remedies or that the plaintiff should for some adequate reason be excused from this requirement is properly subject to dismissal."); *Johnson v. U.S. Postal Serv.*, 2016 WL 791076, at *1-2 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff's Title VII claim should be dismissed for failure to state a claim where plaintiff failed to allege exhaustion of administrative remedies); *Chhim v. Univ. of Tex. at Austin*, 2016 WL 154142, at *4 (W.D. Tex. Jan. 11, 2016) (dismissing Title VII retaliation claim on Rule 12(b)(6) motion for failure to exhaust administrative remedies), *aff'd*, 836 F.3d 467 (5th Cir. 2016). The Court should dismiss West's ADA claims against AllTex without prejudice. *See Stroy v. v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 n.2 (5th Cir. 2018) (noting that when a district court dismisses a claim for failure to exhaust under Federal Rule of Civil Procedure 12(b)(6), the dismissal is without prejudice).

Alternatively, AllTex argues the Court should dismiss West's ADA claims as time-barred. Specifically, AllTex argues that because a plaintiff must file suit in federal court no later than 90 days after receiving the right-to-sue letter from the EEOC, and AllTex was named as a defendant "139 days after" the date West is presumed to have received his right-to-sue letter, West's suit against AllTex is

11

untimely. AllTex Mot. 9. "For Title VII and ADA claims, '[e]xhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.'" *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 207 (5th Cir. 2015) (per curiam) (alterations in original) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)). Upon receipt of a right-to-sue letter, the plaintiff has ninety days to file a lawsuit. 42 U.S.C. § 2000e–5(f)(1); *Zamora v. GC Servs., L.P.*, 647 F. App'x 330, 331-32 (5th Cir. 2016) (per curiam); *Garcia*, 631 F. App'x at 207; *Taylor*, 296 F.3d at 379. This ninety-day statute of limitations is strictly construed. *Garcia*, 631 F. App'x at 208 (citing *Taylor*, 296 F.3d at 379). "Although filing of an EEOC charge is not a jurisdictional prerequisite, it is a precondition to filing suit in district court." *Taylor*, 296 F.3d at 379. (internal quotation mark and citation omitted). Here, West fails to allege facts that would permit the Court to reasonably infer that he filed his claims against AllTex within 90 days of receiving notice of his right-to-sue AllTex. As explained above, West has failed to allege that he named AllTex in his EEOC charge. But if West did name AllTex in his EEOC charge, the Court should dismiss his ADA claims against AllTex as time-barred.

## Recommendation

For the foregoing reasons, ABM's Motion (ECF No. 41) should be DENIED as unnecessary. AllTex's Motion (ECF No. 35) should be DENIED as unnecessary to the extent it is directed to any claim under the STAA. AllTex's Motion should be

GRANTED as to West's ADA claims, and those claims should be dismissed without prejudice. West's ADA claims against ABM remain.

**SIGNED** August 17, 2020.

                                              REBECCA RUTHERFORD
                                              UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).